## PORTER ET AL. *v.* PATTERSON ET AL.

[No. 6,244. Filed October 16, 1908.]

1. APPEAL.—*Briefs.*—*Rules.*—A rigid compliance with Appellate Court rules in the preparation of appellants' brief will not be enforced, where the result would be to preclude a consideration of the merits of the case. p. 406.

2. CONTRACTS.—*Sale of Goods.*—*Statute of Frauds.*—An oral contract for goods of the value of over $50, where the goods have been delivered but not accepted, and an invoice thereof in writing delivered to the purchaser, is invalid under the statute of frauds (§7469 Burns 1908, §4910 R. S. 1881). p. 408.

3. SAME.—*Statute of Frauds.*—*Sales.*—*Letters.*—A letter canceling a verbal order for goods of the value of more than $50, and a letter, in answer to an invoice, declining to receive the goods, do not constitute a memorandum of the contract sufficient to take the contract out of the statute of frauds (§7469 Burns 1908, §4910 R. S. 1881). pp. 409, 410, 411.

4. SAME.—*Statute of Frauds.*—*Parol Evidence.*—Parol evidence cannot be received to supply any essential part of a contract unenforceable because made in violation of the statute of frauds (§7469 Burns 1908, §4910 R. S. 1881). p. 409.

5. PLEADING. — *Complaint.* — *Contracts.* — *Oral.* — *Presumptions.*—Where the complaint is silent as to whether an alleged contract was written or oral, the presumption is that it was oral. p. 411.

6 CONTRACTS.—*Repudiation.*—*Reasons.*—*Statute of Frauds.*—The repudiation of a contract, invalid under the statute of frauds (§7469 Burns 1908, §4910 R. S. 1881), is sufficient whether a good reason, a wrong reason, or no reason, be given therefor. pp. 411, 413.

7 PLEADING.—*Insufficient Complaint.*—*Answer.*—Overruling a demurrer to a paragraph of answer does not constitute material error where the complaint is not sufficient. p. 413.

From Allen Circuit Court; *E. O'Rourke*, Judge.

Action by Albert W. Porter and another against Reuben S. Patterson and another. From a judgment for defendants, plaintiffs appeal. *Affirmed.*

*Clyde M. Gandy* and *Harry H. Hilgemann,* for appellants. *Zollars & Zollars,* for appellees.

MYERS, P. J.—Appellants, as partners and commission merchants in New York City, through one of their traveling salesmen, it is claimed, received an order from appellee Patterson, a retail merchant in Ft. Wayne, Indiana, for certain underwear, to be thereafter shipped to the latter. The alleged order was dated January 26, 1904. On July 15, 1904, appellants shipped the underwear to said appellee, who, on July 22, notified appellants of the receipt of invoices for said goods, but that he would not receive them, and that they were at the freight-house awaiting appellants' order. Appellants on March 15, 1905, brought this action to recover from said appellee on account of the alleged order, the sum of $279.

As we understand appellants' brief, the issues submitted to a jury for trial were formed by the third paragraph of the complaint, answered by a general denial and two affirmative paragraphs alleging cancelation of the order pursuant to an agreement alleged to have been made between appellee Patterson and appellants' salesman, whereby the former had the privilege of canceling said order in the event he could find the underwear he desired, and to which affirmative paragraphs of answer appellants replied by a general denial and by an amended second and also by a third paragraph. The trial resulted in a general verdict for said appellee.

Appellants have assigned as error the overruling of their demurrer to the second and third paragraphs of answer, and the overruling of their motion for a new trial. Other errors are assigned, but from an examination of their brief they must be considered as waived.

Harry P. Fletcher was made a party defendant in the

court below, and is in this court as an appellee, but it clearly appears that he was simply an employe of the appellee Patterson's, and had no other interest in the transaction. Therefore, in the consideration of this case we will give attention only to the merits of the controversy as we see them between the appellants and the appellee Patterson.

Appellee Patterson first insists that appellants have failed to comply with rule twenty-two of the Supreme Court and this Court, and for that reason no question is here 1. presented, and the judgment should be affirmed or the appeal dismissed. While there is much force in this contention, yet we have concluded to give appellants the benefit of the doubt, and to consider what we believe to be the controlling question in this case.

In the third paragraph of the complaint it is alleged that on January 26, 1904, the appellants and the appellee Patterson "entered into a certain contract and agreement whereby said defendant bought from these plaintiffs a certain line of underwear, fully set forth and described in two bills of paticulars filed with the original paragraph of complaint herein, annexed thereto, made part thereof, and also made a part hereof, marked respectively exhibit B and exhibit C; that, in accordance with said agreement, defendant Patterson agreed to pay to· these plaintiffs the sum of $279 for said underwear; that on or about July 15, 1904, plaintiff shipped to said defendant the two lots of underwear before described, and more fully set forth in the two bills of particulars annexed to the first paragraph; * * * that the same were tendered to said defendant, but he failed and refused, and still fails and refuses, to accept the same; that the plaintiffs were ready and willing, and still are willing and ready, to deliver the same to said defendant; that there is now due on said contract the sum of $279, and the same is unpaid; * * * that the before-mentioned contract between these parties is evidenced by the following letters, together with the copies of invoices filed with the first para-

graph herein, annexed thereto, made part thereof, and also made a part hereof:

" 'Ft. Wayne, Indiana, March 31, '04.
Messrs. A. W. Porter & Co.,
Gentlemen: Please cancel the following styles of underwear bought of your agent for fall delivery: [Then follows an itemized statement of the goods.] ·We found that we were able to buy these goods for less money.
Very truly,
Rueben S. Patterson.'

" 'Ft. Wayne, Indiana, July 22, 1904.
Messrs. A. W. Porter & Co.,
Gentlemen: We have invoices from you for two cases of ribbed underwear which we canceled some time ago. These goods are at Lake Shore freight-house at your own risk, awaiting your order; we have refused them.
Very truly,
Reuben S. Patterson.' "

It is further alleged that said letters were signed by defendant Patterson, and mailed to plaintiffs by said defendant at the post-office in Ft. Wayne, Indiana, and were duly received by them; ''that the underwear referred to in the aforesaid letters is the same as that herein alleged to have been ordered by this defendant from these plaintiffs; that the invoices referred to in the aforesaid letter of July 22, 1904, contained a full and complete statement of the goods ordered from the plaintiffs by said defendant, of the styles, prices, qualities and materials, of the amount ordered and the prices agreed upon between the parties, and the terms of payment; that said invoices referred to in said letter contained a full, true and complete statement of the contract hereinbefore set forth, whereby said defendant bought from these plaintiffs the underwear herein mentioned; that copies of such invoices have been filed with the first paragraph of this complaint, attached thereto, made a part thereof, and also made a part hereof, marked respectively exhibit B and exhibit C.''

Referring to the first paragraph of the complaint in the

transcript before us, we find exhibits marked respectively A,
B and C.   Exhibit B is as follows:

"All claims or errors must be reported within ten days.

New York, 7, 15, 1904.

Mr. S. Patterson        Ft. Wayne, Indiana.
Bought of A. W. Porter & Co.
Commission Merchants Knit Underwear.

43 & 45 White St.

Duplicate.

This Bill is payable to Merchants
Trust Co., 346 Broadway, N. Y.
Make check payable to order of Merchants
Trust Co., and mail direct.
Terms:   Payable in N. Y. Exchange.

Net 10 Oct. 1

Case No.    Style        Size    Doz.    Price    Amount.
36,381 F. H. S.''

[Here follow figures indicating goods ordered, ending
with the figures 139.50.]

Exhibit C is substantially the same as exhibit B, except
that under Case No. are the figures "36,535."

Section seven of our statute of frauds (§7469 Burns 1908,
§4910 R. S. 1881) provides: "No contract for the sale of
any goods, for the price of $50 or more, shall be valid, un-
less the purchaser shall receive part of such property, or shall
give something in earnest to bind the bargain or in part pay-
ment, or unless some note or memorandum in writing of the
bargain is made, and signed by the party to be charged
thereby, or by some person thereunto by him lawfully au-
thorized." The delivery or attempted delivery of the goods,
upon the receipt by the buyer of the invoices, did not take
the contract out of the statute.   There was no receipt
2.   of the property or any part of it by the purchaser.
*Dehority* v. *Paxson* (1884), 97 Ind. 253; *Goodwine* v.
*Cadwallader* (1902), 158 Ind. 202.

It is sought to take the case out of the operation of the
statute by an attempted showing of a sufficient memorandum

signed by the purchaser. It is claimed on behalf of the appellants that such a memorandum is shown in the two letters signed by the purchaser, together with the invoices sent by the seller to the buyer mentioned in the second letter, and designated as exhibits of the third paragraph by referring to them therein as exhibits of another paragraph. The written evidence of the contract may consist of a letter or letters, and the terms of the contract, or some of the terms thereof not set forth in the letter or letters may by them be sufficiently shown by reference to some other writing in such manner as clearly to adopt the latter. Yet the memorandum relied upon to take the transaction out of the statute, whether consisting of a single writing or of different writings thus made one by reference from one to the other, must contain all the essential elements of the alleged contract. Recourse to parol evidence cannot be permitted to supply any essential ingredient of the contract. *Lee* v. *Hills* (1879), 66 Ind. 474; *Ridgeway* v. *Ingraham* (1875), 50 Ind. 145, 19 Am. Rep. 706; *Carskaddon* v. *City of South Bend* (1895), 141 Ind. 596; *Zimmerman* v. *Zehendner* (1905), 164 Ind. 466.

In *Stone* v. *Browning* (1877), 68 N. Y. 598, it is said: "Performance by the plaintiffs of their part of the oral contract was not sufficient to give validity to it. * * * So long as the plaintiffs reposed upon a verbal contract, void under the statute, they exposed themselves even to an unjust refusal to accept. * * * The respondents, in their supplemental points, suggest that the letter of the defendants, dated April 3, 1863, was a sufficient memorandum of the contract to satisfy the statute. This letter, it is true, acknowledges the purchase of the goods, but it does not state the price or any of the terms of the contract. These deficiences cannot be supplied by oral evidence. All the essential parts of the contract must be evidenced by the writing."

In *Wright* v. *Weeks* (1862), 25 ·N. Y. 153, it was said by Denio, C. J.: "If a reference in a writing to a verbal agreement would let in that agreement, where the subject was one which the statute required to be in writing, it would be sufficient for parties desiring to avoid the trouble of reducing their bargains to writing, to sign a statement that they had contracted verbally respecting a given subject, and they would thus dispense with the statute." In the same case it was held by Allen, J., that "if the agreement be vague and indefinite, .so that the full intention of the parties cannot be collected from it, it cannot be said that the contract is in writing, and it is therefore void. If the parties have used abbreviations or technical terms, or terms of trade, evidence may be given, by parol, to show what meaning such abbreviations ·and terms had acquired, by usage and custom, but· not in what sense the parties used them. * * * So an agreement need not be perfect by itself. It may be made certain and definite, and thus valid, under· the statute, by reference to another writing, as well as by incorporating the entire contract in one paper. But the reference must be to another paper, and so distinct as to make that paper a part of the contract itself. * * * The parties cannot unite two papers, so as to make them unitedly constitute a valid contract, unless they are physically joined, or the intention to unite them appears on the face of the papers. If the connection between two papers depends upon verbal testimony, or if the reference in the written memorandum is to something verbal, the whole evil intended to be remedied by statute will be experienced."

It is not pretended that the letters of appellee Patterson were in themselves sufficient to take the contract out of the statute, but the pleading proceeds upon the assumption that what is lacking in the letters is sufficiently supplied by the invoices mentioned in the second letter. We shall not take the space to comment upon any differences observable between these letters and the invoices

to which we have referred or to determine whether, taken together, the letters and invoices contain all the essential ingredients of a contract of sale, or to consider the practice here adopted of inserting one writing in the body of a pleading and making an exhibit of another distinct writing, where both writings are relied upon as together constituting one written contract which is made the basis of the action. The contract of sale on which this action was based was made January 26, 1904. It is alleged that the parties on that date "entered into a certain contract and agreement whereby said defendant bought," etc., and that there was due on "said contract" a sum specified. The underwear is referred to in the pleading as the same "as that herein alleged to have been ordered," and it is alleged that the invoices contained a full and complete statement of the goods ordered from the plaintiffs by said defendant, of the styles, prices, qualities, and the amount ordered and the price agreed upon, etc. No order is set forth, and it is not sought to show a written contract or memorandum by coupling the letters, or either of them, with any order. The pleading seeks to couple the letters with the invoices alone. It, of course, is to be assumed that the contract made or the order given January 26, 1904, was oral. The first writing mentioned is the letter written by appellee Patterson more than two months thereafter—March 31, 1904. At that time, the contract not being in writing, appellee Patterson had a right to repudiate it or to cancel it, whether for a just or an unjust reason, or for no assigned reason; for the contract was not enforceable against him under the statute.

By his letter of March 31 the purchaser canceled "the following styles of underwear bought of your agent for fall delivery," etc., mentioning certain styles. The appellants having received this letter in due course ignored it, at least in part, and later, about July 15, shipped to the appellee two lots of underwear, which they

alleged are described and more fully set forth in "the two bills of particulars" filed with another paragraph of complaint. These two "bills of particulars" are alleged to be copies of the "invoices" referred to in the letter received by the appellants from appellee Patterson, dated July 22, which bills of particulars are, upon their face, bills for merchandise. The letter of July 22 acknowledges the receipt of invoices from the appellants for two cases of ribbed underwear. The cancelation mentioned in this letter is not a declaration of cancelation at its date, but is a reference to a cancelation made "some time ago," a cancelation not of the invoices or of any order or contract other than the oral contract or order of January 26. To that declaration of cancelation the writer of the letter of July 22 therein adhered. It is impossible to regard the letters as referring to the invoices or as coupling the invoices with the letters as evidence of the contract of January 26. Nothing was said about the invoices except an acknowledgment that they had been received, together with which acknowledgment was a statement of the former cancelation of the contract, and information as to the place where the goods were at the risk of the appellants, and a statement that they had been refused by appellee Patterson.

To suffer the seller thus to uphold his claim that a sufficient memorandum was signed by the buyer because the latter had merely acknowledged by letter the receipt of a bill for the goods made out by the sellers, the buyer, in connection with such acknowledgment, adhering to his former declaration of cancelation, would be to circumvent the purpose of the statute. The two letters set out in the complaint must be considered together. Certainly there was no reference in the first to the invoices not then in existence. Its purpose was to cancel, and not to affirm, the former oral contract. There was not in either letter anything indicative of a purpose to revoke that cancelation, but rather a clear manifestation of purpose to adhere to it, notwithstanding the

attempt of the seller to ignore it by the shipment of a portion of the goods and the forwarding of a bill therefor to the buyer. We conclude the complaint was materially defective, and therefore there could be no material error in overruling a demurrer to any answer thereto. *Bonham* v. *Doyle* (1907), 39 Ind. App. 438.

Appellants' motion for a new trial was overruled, and counsel have sought to present a matter which resolves itself into the question: If the oral contract of sale contained a provision for cancelation by the buyer, provided he should find another kind of underwear desired by him, would the buyer be obliged to notify the seller of the finding of such other kind of goods in order to entitle the buyer to cancel the contract? It is sufficient to say in answer to this question that such material provision in an oral contract of sale as here counted on could not be available for any purpose on the part of the appellants. The entire contract being invalid under the statute, the sellers were precluded from enforcing it by suit against the buyer, if he refuse to accept the goods, regardless of any injustice done the sellers from a moral standpoint, or however contrary to the oral agreement.

Judgment affirmed.