## Indiana Trust Company, Executor, *v.* Finitzer.

[No. 19,725.   Filed May 26, 1903.]

Frauds, Statute of.—*Promise to Answer for Debt of Another.—Husband and Wife.*—A wholesale liquor dealer refused to extend credit to a saloon keeper unless the saloon keeper's wife would become responsible. She said, "I am running this business. Send on the goods, and I will be responsible." Thereafter the goods were billed to the wife and charged to her, but the business was conducted in the name of the husband, the license afterward being renewed in his name. *Held,* that the agreement made by the wife was nothing more than a parol promise to answer for the default of her husband, and was void under the statute of frauds. *pp. 647-650.*

Pleading.—*General Denial.—Defenses.—Statute of Frauds.*—A defendant in an action on a contract may, under the general denial, show that the contract between the parties was a different one from that set forth in the complaint, or that the agreement was void and that no contract at all was made. *p. 651.*

From Superior Court of Marion County; *Vinson Carter,* Judge.

Action by Indiana Trust Company as executor of the will of Christian Koepper against Susie A. Finitzer. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*H. M. Dowling,* for appellant.
*C. R. Hasely,* for appellee.

Hadley, J.—Complaint by appellant in two paragraphs: (1) For goods sold and delivered at the special instance and request of the defendant, between the dates of October 25, 1895, and March 5, 1896; (2) on an account stated between the parties on the 15th day of March, 1896, and which the defendant then agreed to pay. The defendant answered the general denial. Trial by the court, and a general finding and judgment for the defendant (appellee).

The only assignment is the overruling of appellant's

motion for a new trial, and the only error complained of is that the decision of the court is not sustained by sufficient evidence and is contrary to law.

Two things are put in issue by the answer: (1) The purchase of the goods by appellee as averred in the first paragraph of the complaint; and (2) the stating of the account and appellee's agreement to pay the same, as averred in the second paragraph.

The record discloses the following undisputed facts: Christian Koepper, appellant's decedent, was, and had been for many years, a wholesale liquor dealer in Indianapolis. John Finitzer, husband of appellee, on October 25, 1895, and for about ten years before, was engaged in the saloon business in the same city, and had from time to time purchased a large part of his supplies from Koepper. His wife (appellee) owned in her own right three or four pieces of real estate, including that occupied by the family and by her husband for his saloon, which two occupancies were in the same building. John Finitzer had fallen behind in his payments for goods to Christian Koepper to the amount of $1,900, and on the 25th of October, 1895, Koepper, accompanied by his attorney, went out to the Finitzer place for the purpose of securing an adjustment of the account due him. Koepper and his attorney on the one side, and Finitzer and his wife (appellee) on the other, had a conference on the subject and reached an adjustment. In this conference Koepper told appellee that he could not sell John any longer; that John had nothing, and already owed him and others; that the property was all hers, and he would not longer sell to John, but, "if she would be responsible, he would continue to supply John with what stock he wanted," and she replied: "I am running this business. Send on the goods, and I will be responsible." Koepper further told her that he would have to open the account in her name, and her answer was: "Send on the goods, and I will be responsible." As a part of the same arrangement and adjustment,

appellee borrowed the money, by executing a mortgage on her real estate, and paid Koepper her husband's account in full to that date. Koepper changed the account on his books on that date, and thereafter billed all goods sent to the saloon to Susie A. Finitzer. After the arrangement the license for retailing the liquors was continued and renewed in the name of John Finitzer. John continued to conduct the business, ordered, received, and sold the goods, and made payments thereon, and in all respects carried it on as it had been going before, except that the goods delivered by Koepper at the saloon were marked in the name of appellee. Christian Koepper having died before the trial of the cause, appellee and her husband were both thereby disqualified, and were not, upon appellant's objection, permitted to testify concerning the arrangement and adjustment with the decedent which resulted in changing the name of the consignee of the goods. In all matters relating to the acknowledgment of the debt by appellee and her promise to pay the same, made to the agents of Koepper at subsequent times and out of his presence, there is a sharp conflict in the evidence. Appellant produced the attorney who was present for Mr. Koepper at the October 25th arrangement, whose testimony concerning the same is given in substance above, and which gives rise to the inquiry: Was the trial court justified thereunder in finding for the appellee?

We can not weigh the evidence upon points where it is in conflict, and we must therefore assume, for the court has so found, that appellee did not create a personal liability by acknowledgments or promises subsequently made. The only question, therefore, for decision, is: Does the language exchanged between Koepper and appellee on the occasion of the adjustment of her husband's debt constitute appellee a purchaser of the goods thereafter delivered at the saloon, or a parol promise on her part to answer for the debt, default, or miscarriage of her husband? If the latter, it was invalid. §6629 Burns 1901, and cases there collected. The burden

rested upon appellant to prove that she was the purchaser. In bargaining with her, on terms of his own suggesting, for the purpose of securing a solvent debtor in lieu of her insolvent husband, it was incumbent upon appellant to show by satisfactory proof that she agreed to and did become a *bona fide* purchaser, and that the arrangement entered into was not a mere fiction for the purpose of charging her as guarantor or as surety for her husband. It is not claimed that appellee in terms agreed to become the purchaser of the goods. The most charged against her is that on being informed by Koepper that he would not longer sell to her husband, but, if she would become responsible, he would continue to supply John—not appellee—with what stock he wanted, she replied: "Send on the goods, and I will be responsible." Her answer was by no means equivalent to saying that she would purchase the goods herself; and her declaration that "I am running this business," or "I am running the business," does not amount to a claim of ownership of the saloon, or of the stock in trade; and there is no evidence that she received in person, or in benefit to her property, any part of the profits or proceeds of the sales subsequently made. Moreover, Koepper informed her that under the arrangement the account would have to be changed from her husband's name to her name. Why did Koepper deem this information necessary, if it was understood that she was to be the *bona fide* buyer? If she was to be the actual purchaser, how else could the account be kept, but in her name? These considerations, associated with the further facts that the husband renewed the saloon license in his own name, and continued to control and carry on the business, in all respects as it had been done before the adjustment, except to receive the goods billed in his wife's name, tend to prove that appellee's agreement was nothing more than a collateral parol promise to answer for the default of her husband; and we therefore think the court had sufficient grounds for finding that she was not the purchaser of the goods.

Appellee had the right to set up the invalidity of the contract as a defense under her answer of general denial. Under such an answer the defendant may show that the contract between the parties was a different one from that set forth in the complaint, or that the agreement was void and that no contract at all was made. *Jeffersonville Water Sup. Co.* v. *Riter,* 146 Ind. 521, and authorities there collected.

We have carefully examined all the evidence given at the trial, and have not been convinced thereby that the court erred in its finding and judgment for appellee.

Judgment affirmed.

Dowling, J., did not participate in the decision of this case.