ROTH *v.* BOLENS ET AL.

[No. 13,514.   Filed December 20, 1929.]

*Vesey, Shoaff & Hoffman* and *Robert Y. Keegan,* for appellant.

*Harris & Harris* and *Colerick, Jackson & Parrish,* for appellees.

McMAHAN, J.—Pending the administration *de bonis non* of the estate of Augustus Bowser, appellant filed a petition asking that the court require the administrators to convey to him a one-sixth interest in certain letters patent.

The facts were found specially, and are, in substance, as follows: Augustus Bowser died intestate, in 1919,

leaving Fayanna Bowser, his widow, and four children, who, with the administrators, are appellees herein; Charles S. Fair and Coyte H. Bolens were appointed administrators, administered the estate and filed their final report April 17, 1924; this report was approved and the administrators discharged May 1, 1925; Bowser, at his death, owned certain letters patent issued by the United States government for certain inventions, the legal title to which, on his death, vested in his administrators, to whom other letters patent were thereafter issued; the equitable interest in said patents and inventions was in the widow and children of said deceased, one-third in the widow and one sixth in each child; the widow died in September, 1925, owning a one-third interest in said patents, and leaving said four children as her only heirs; in December, 1927, said children filed a petition in which was stated that such letters patent had not been administered and disposed of by the former administrators, and asking for the appointment of administrators *de bonis non*. Acting on said petition, the court appointed Fair and Bolens as administrators *de bonis non*, and, on January 4, 1928, they filed their petition asking authority to convey all of said patents to said four children, they being the sole heirs of Augustus Bowser as well as of his widow; this petition was granted, and the assignment was made, reported to and approved by the court January 9, 1928. On February 6, 1928, appellant filed his petition setting out the ownership by said decedent of the patents, and that he had filed applications for renewal or reissue of some of these, and avers the death of said decedent, and that he left surviving his widow, who thus became the legal or equitable owner of one-third of said patents and inventions, that said widow, on March 20, 1924, executed an assignment of a one-sixth interest in all of said patents and inventions to him, a copy of said assignment being attached to the

petition, and which is copied in full on the finding. This assignment recites that she, as such widow, had sold, assigned and transferred to appellant, his heirs and assigns a one-sixth interest in all patents, applications, licenses, patent-rights, etc., then or thereafter held by the estate of Bowser, and in all profits, royalties or other income theretofore or thereafter earned from such patents, applications, etc., and she therein authorized and empowered "the said administrators to pay to said William M. Roth, his heirs and assigns, a sixth of any profits, royalties or other income heretofore or hereafter earned or received from the said patents, applications, licenses, assignments, patent rights, etc., or the sale thereof, and in the event that the title to the applications, licenses and assignments, is transferred to the heirs of the said Augustus Bowser, I authorize and empower said administrators to transfer an undivided one-sixth interest in each to said William M. Roth."

The court found that no authenticated copies of the letters patent were filed in the clerk's office of the Allen Circuit Court with an affidavit setting forth the interest of the purported assignor in such letters patent as required by §12225 Burns 1926, which the said Roth well knew; that, in granting the administrators authority to make the assignment to the four children, the court, at the time when said order was made, was duly advised in the premises and was not misled by the administrators or by said heirs as to the facts or evidence adduced at the hearing of the petition of the heirs praying for an assignment to them of the interest of Fayanna Bowser in said patents, and that the finding and order of the court was justified under the law and evidence.

Upon these facts, the court concluded and decreed that the relief prayed for by appellant should be denied, and that the order of January 9, 1928 directing the administrators of the estate of Augustus Bowser to assign

the patents to the four children, be allowed to stand without alteration or modification the same as if the petition of appellant had not been filed.

Section 12225 Burns 1926, provides: "It shall be unlawful for any person to sell or barter, or offer to sell or barter, any patent right, the whole, or any part thereof, or any right which such person shall allege to be a patent right, or sell, barter, grant or license, or offer to sell, barter, grant or license, the right to manufacture, use or sell the patented article, . . . within the state, without first filing with the clerk of the court of such county copies of the letters patent, duly authenticated, and, at the same time, swearing or affirming to an affidavit before such clerk that such letters patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter, grant or license the right so patented, or any part thereof, and the right to manufacture, use and sell the patented article, which affidavit shall set forth his name, age, occupation and residence, and, if an agent, the name, occupation and residence of his principal. A copy of this affidavit shall be filed in the office of said clerk, and the clerk shall give a copy to the applicant, who shall exhibit the same to any person on demand." Any one violating this section is subject to a fine of not more than $1,000, and is also made liable to the party injured in a civil action for any damages sustained.

Appellees contend that the so-called assignment is void, that it created no legal rights of any kind, that, in so far as it is executory, either party to it may ignore it at his pleasure, and that appellees may take advantage of its invalidity. Appellant, on the other hand, insists that the invalidity of the assignment is not in issue, since the only answers filed were a general denial and *non est factum,* it being his contention that the only

effect of the latter answer was to require proof of the execution of the instrument. Appellant says the illegality of the contract for failure to comply with the statute cannot be shown under the plea of *non est factum*.

Under a plea of *non est factum*, the defendant may show the contract sued on is not his. *Mix* v. *People* (1879), 92 Ill. 549. If a contract is voidable only, the cause for avoiding it must be specially pleaded. But it is otherwise when the contract is void from the beginning. In such a case the party may legally deny that he ever gave any contract. *Anthony* v. *Wilson* (1833), 14 Pick. (Mass.) 303. A defendant, on answer of "*non est factum*, may give in evidence that the deed was void at common law, *ab initio*." *Van Valkenburgh* v. *Rouk* (1815), 12 Johns. (N. Y.) 337. Conceding that the rule in equity was otherwise, the distinction between the rule at law and in equity has been abolished in this state.

Appellant's petition was met by an answer of general denial, and *non est factum*. Whatever may be the practice in other states, it is the established rule in this state that an objection that a contract is void because prohibited by the statute of frauds may be made under a general denial. *Suman* v. *Springate* (1879), 67 Ind. 115; *Indiana Trust Co., Exr.*, v. *Finitzer* (1903), 160 Ind. 647, 67 N. E. 520; *Graham* v. *Henderson Elevator Co.* (1916), 60 Ind. App. 697, 111 N. E. 332. We hold that, the contract in question being void from the beginning, the invalidity thereof could be raised under the general denial.

The Supreme Court of Kansas, in *Mason* v. *McLeod* (1896), 57 Kans. 105, 45 Pac. 76, 41 L. R. A. 548, 57 Am. St. 327, in discussing the effect of a contract for the sale of a patent right, made without complying with a statute similar to the statute of this state, said: "The

penalty implies a prohibition, and contracts made by a vendor of patent-rights in violation of the act are void as between the parties." That was an action by the vendee in such contract to annul the contract and to recover that which he had paid, the contract not having been fully executed. In speaking of the rights of the purchaser, the court said: "The general rule that courts will not enforce contracts prohibited by statute or allow the recovery of money or property paid or delivered in pursuance of them does not apply to McLeod (the purchaser). He can not be held to be *in pari delicto*. The duties prescribed by the statute are imposed upon the vendor of patent-rights, and are provided for the protection of purchasers. The law was not violated by McLeod. It placed no burdens upon him, and, having committed no wrong, he is not precluded from asking and obtaining relief." The statement that the purchaser is not precluded from asking affirmative relief does not necessarily mean that such party can compel specific performance of the contract. The court was there dealing with a case where the affirmative relief asked by the purchaser was a cancellation of the contract and for a return of that which he had paid.

It is a principle of equity that where a contract is illegal, immoral or against public policy, a court of equity will not, at the suit of one of the parties, when the agreement is executory, either compel its execution or decree its cancellation, but will leave the parties in the exact position in which they have placed themselves, refusing all affirmative relief to any of the participants. *Booth* v. *Edwards* (1926), 322 Ill. 489, 153 N. E. 677. See *School City of Evansville* v. *Hickman* (1911), 47 Ind. App. 500, 94 N. E. 828.

A contract for the sale of a patent right without complying with §12225, *supra*, is void, and, as was said in

*Pipecreek School Tp.* v. *Hawkins* (1912), 49 Ind. App. 595, 599, 97 N. E. 936: "A void contract cannot be enforced, no matter what hardship it may work, or how strong the equities may appear." To same effect, see *Baltimore, etc., R. Co.* v. *Duncan* (1916), 62 Ind. App. 161, 112 N. E. 898; *Sandage* v. *Studebaker Brothers Manufacturing Co.* (1895), 142 Ind. 148, 41 N. E. 380, 34 L. R. A. 363, 51 Am. St. 165. The application of appellant is, in effect, an action for specific performance of a void contract, which we hold will not lie.

Judgment affirmed.